IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| V. | § § | 3:06-CV-1732-K |
| EXXON MOBIL CORPORATION, | § § § § | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions:

(1)     the Equal Employment Opportunity Commission's (the "EEOC") Application for Temporary Restraining Order and Preliminary Injunction Pursuant to Rule 65 (Document No. 2);

(2)     the EEOC's Motion to File Additional Affidavits and Exhibits in Support of its Application for Preliminary Injunction (Document No. 15-1);

(3)     the EEOC's Motion to Extend Time (Document No. 20);

(4)     the EEOC's Supplemental Brief and Amended Request for Preliminary Relief (Document No. 24); and

(5)     the EEOC's Supplement to Its Petition For Preliminary Injunction Pursuant to Rule 65 F.R.C.P. (Document No. 25).

The Court **GRANTS** the EEOC's motion to file additional affidavits and exhibits.  The

attached affidavits and exhibits are, therefore, deemed filed as of this date.  The EEOC does not need to file those documents separately.

On October 16, 2006, the Court conducted a hearing to determine the EEOC's Application for Preliminary Injunction.   As set forth in the Court's Order dated December 22, 2006, the Parties agreed to engage in settlement negotiations.  On January 31, 2007, the Parties filed a Joint Status Report indicating that they could not reach a settlement.  Subsequently, on March 1, 2007, the Court conducted a Status Conference regarding Federal Aviation Administration ("FAA") Administrator Marion Blakely's proposal to change the mandatory retirement age rule for United States commercial pilots.  Because the Court considered the FAA's proposal in the March 1, 2007 Status Conference and in this Order, the Court **DENIES** the EEOC's Motion to Extend Time as moot.

The Court's decision concerning the preliminary injunction is not a decision on the merits of the underlying case, and the following findings of fact and conclusions of law are not binding at trial.  *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981).  The Court **DENIES** the EEOC's request for a preliminary injunction and preliminary relief because the EEOC has not met its burden of proving the elements necessary for establishing a such an injunction.  Accordingly, any relief not expressly granted herein, is **DENIED.**

I.      **Factual and Procedural Background**

Defendant Exxon Mobil Corporation ("Exxon") is a fully integrated global oil and gas company with its own aviation department.  Exxon's aircraft fleet includes nine sophisticated jets–two Bombardier Global Express jets, two Gulfstream IV Jets, and five Bombardier Challenger 300 jets.  In 2005, Exxon pilots carried nearly 4,000 passengers over 2,000,000 nautical miles.

Michael Morschauser has been a pilot for Exxon since 1989.  As a pilot for Exxon, his duties include flying company personnel and business passengers on business jets domestically and internationally.  Exxon maintains a corporate policy (the "Policy" or "Age 60 Rule") which prohibits its pilots, like Morschauser, from flying corporate aircraft at the age of 60 and forces such pilots to involuntarily retire at that age.  Exxon's Age 60 Rule mirrors the FAA's Age 60 Rule.  Morschauser was aware of Exxon's Policy and the fact that he would be relieved from flight duty at age 60.

On June 19, 2006, Morschauser received a letter from Exxon stating that "in keeping with the Company's policy to have pilots cease flying upon reaching age 60," Exxon would remove Morschauser from flight duty on September 7, 2006, his 60th birthday, and retire him by October 1, 2006.  Morschauser and former Exxon pilot Glen Skaggs ("Skaggs") filed separate Charges of Discrimination in the EEOC's Dallas District Office alleging discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA").  29 U.S.C. § 623.  Based on those charges, the EEOC issued a Letter

of Determination on August 16, 2006 finding that Exxon's Policy violated the ADEA. The EEOC, therefore, found that Exxon discriminated against Morschauser, Skaggs and other similarly situated employees in violation of the ADEA.  On February 26, 2007, the EEOC filed a Supplemental Brief and Amended Request for Preliminary Relief which added Exxon pilot Burford "Buff" Barrett ("Barrett") to the class of similarly situated pilots who were removed from active flight status at the age of 60 by Exxon.  Exxon removed Barrett from active flight duty on December 7, 2006.  Similarly, on May 18, 2007, the EEOC filed a Supplement to its Petition for Preliminary Injunction to add (1) Steven Hermann ("Hermann"), (2) Gary Schaffer ("Schaffer"), and (3) Thomas O'Malley ("O'Malley") to the class of similarly situated pilots who will be removed from active flight status at the age of 60 by Exxon on or before June 1, 2007.

The EEOC filed this action under the ADEA and Rule 65 of the Federal Rules of Civil Procedure to enjoin Exxon from involuntarily retiring Morschauser (and now Barrett, Hermann, Schaffer, and O'Malley)(hereinafter "Exxon's Age 60 Pilots") under its corporate Policy.  In its Order dated September 27, 2006, the Court denied the EEOC's Application for a Temporary Restraining Order as moot based on Exxon's agreement not to take any action with respect to Morschauser's employment until after the Court conducted a hearing and ruled on the EEOC's Application for Preliminary Injunction.  On October 16, 2006, the Court conducted a hearing regarding the EEOC's Application for Preliminary Injunction.  While the EEOC's Application for Preliminary

Injunction was pending, the FAA announced a proposal to consider modifying the FAA's Age 60 Rule.  In light of the FAA's proposal, the Parties agreed to engage in settlement negotiations as set forth in the Court's Order dated December 22, 2006.  On January 31, 2007, the Parties filed a Joint Status Report indicating that they could not reach a settlement.  Subsequently, on March 1, 2007, the Court conducted a Status Conference to consider the FAA's proposal to change its Age 60 Rule.

As set forth in its Brief in Opposition to the EEOC's Application for Preliminary Injunction and during the Preliminary Injunction Hearing, Exxon contends, among other things, that its Age 60 Rule is identical to the current FAA Policy for airline pilots and qualifies as a bona fide occupational qualification ("BFOQ") under the ADEA. Currently, the FAA Age 60 Rule provides that no airline carrier "may use the services of any person as a pilot...if that person has reached his 60th birthday.  No person may serve as a pilot [in commercial airline] operations...if that person has reached his 60th birthday." 14 C.F.R. § 121.383(c).  After extensive research, the FAA implemented its Age 60 Rule in 1959 because of concerns that hazards to safety exist when airliners use aging pilots. *Coupe v. Federal Express Corp.,* 121 F.3d 1022, 1025 (6th Cir. 1997).  In December 1995, the FAA extended the Age 60 Rule to apply not only to major airline pilots but also to regional and commuter airline pilots.  Exxon does not argue that these individuals are not highly skilled pilots; instead, this case is about whether Exxon may rely on the current FAA Age 60 Rule as a BFOQ.

Despite scientific advances since the Rule's adoption, the FAA has concluded that it remains impossible to predict, with reliable accuracy, the presence or onset of various medical problems in an aging pilot or detect and measure adequately declining physical and mental functions.   In July 2005, during hearings before the Subcommittee on Aviation of the Senate Committee on Commerce, Science & Transportation, Dr. Jon L. Jordan, the FAA's Federal Air Surgeon, stated,

> [The Age 60 Rule] remains the best determination that can be made of the time when a general decline in health-related functions and overall cognitive capabilities has reached a level where decrements in a pilot's performance may jeopardize safety. The "Age 60 rule" has been repeatedly reviewed to determine whether new and sufficient evidence exists to warrant a reconsideration of the regulation. Studies conducted to date do not present sufficient information that would address concerns about negatively impacting the current level of safety by changing the rule.

Likewise, as recently as March 2006, during another hearing before the Subcommittee on Aviation regarding the FAA's fiscal year 2007 Budget, the FAA stated:

> The FAA has conducted five studies, using various analytic methodologies, on the relationship of pilot age to accidents. The most recent study, published in April 2004, corroborates the findings of two previous empirical studies—specifically that accident rates appear to increase with pilot age. Recent non-FAA research, published in 2005 in open, peer-reviewed scientific literature, reported that the risk of violations of flight regulations increased with age in a longitudinal study of commuter air carrier and air taxi pilots. Violations of flight regulations are important indicators because pilots with violations are more likely to be involved in accidents or incidents than pilots without violations.  The "Age 60 rule" has served well as a regulatory limit in the United States. The FAA recognizes that science does not absolutely dictate what age is most appropriate for retirement. No absolute, scientific formula may readily be applied to predict progressive, anatomic, physiological, and cognitive decline associated with aging because it is variable in severity and onset among individuals. The consistency of findings across empirical studies, however, suggests that changes to the "Age 60

rule" should be approached cautiously; so, we presently have no plans to revise the rule.

Although the FAA has remained steadfastly committed to the Age 60 since its adoption, the FAA is now considering changing the rule. On January 30, 2007, while this motion was pending before the Court, Marion Blakely, the FAA Administrator, issued a public statement at the National Press Club that the FAA will propose a new mandatory retirement age rule that will parallel the standard adopted by the International Civil Aviation Organization ("ICAO"). Under the ICAO Rule, either the pilot or co-pilot may fly up to age 65 as long as the other crew member is under 60 (the "Age 65/60 Rule"). Therefore, under the Age 65/60 Rule, age 60 is still relevant as no agency allows commercial aircraft to be operated solely by pilots over age 60. According to Blakely, due to the procedural requirements, it may take as long as two years for the FAA to issue a final rule adopting or rejecting the Age 65/60 Rule. If adopted, the FAA has stated the Age 65/60 Rule would be applied prospectively, not retroactively. Thus, the new rule would not contain a "grandfather" clause and would apply only to those pilots who have not yet reached age 60 by the time the rule goes into effect. In Exxon's Response to the EEOC's Objection to the Joint Report and Motion for Extension filed on February 2, 2007, Exxon has stated that it would follow the proposed FAA Age 65/60 Rule if and when the final rule goes into effect.

## II.    Analysis

A preliminary injunction may be granted only if the EEOC establishes the

following four elements (1) a substantial likelihood that it will prevail on the merits, (2) a substantial threat that Exxon's Age 60 Pilots will suffer irreparable injury if the injunction is denied, (3) that the threatened injury to Exxon's Age 60 Pilots outweighs the threatened harm the injunction may do to Exxon, and (4) that granting the preliminary injunction will not disserve the public interest.  See *Harris County v. Carmax Auto Superstores, Inc.*, 177 F.3d 306, 312 (5th Cir. 1999);  *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985).  The decision to grant or deny a preliminary injunction is left to the sound discretion of the district court.  A preliminary injunction is an extraordinary remedy which should only be granted if the movant has carried his burden of persuasion on all of the four factors.  *Miss. Power & Light*, 760 F.2d at 621.

The EEOC argues that the Court should presume irreparable harm under *Cosmair*. 821 F.2d at 1090.  The EEOC also contends that because irreparable harm is presumed, it need only prove "some chance" of winning, as opposed to a substantial likelihood of success on the merits.  The Court disagrees with the EEOC and will not presume irreparable harm.  In *Cosmair,* the Court held that irreparable injury is presumed when a civil rights statute has been violated.  *Id.*  In that case, the Fifth Circuit found that the company, which presented no legal defense, violated the ADEA when it retaliated against its employee for filing a charge of discrimination.  *Id.*  However, the EEOC has not proven a violation of the ADEA in this case because it has not "satisfied all the statutory

- 8 -

conditions." *Id.* Exxon has presented a BFOQ defense, and the EEOC must overcome that defense in order to prove an ADEA violation as set forth in that statute.

In fact, *Cosmair* holds that only irreparable harm may be presumed when granting injunctive relief and only when a statutory violation has been <u>proven</u>. *Torres v. County of Webb,* 150 F. App. 286, 2005 WL 2367517 (5th Cir. Sept. 27, 2005). Therefore, even if the Court were to presume irreparable harm (which it does not), the EEOC would at least be required to carry its burden on all other required elements. Thus, the EEOC would have to prove a substantial likelihood of success on the merits, not merely "some chance" of winning.

The EEOC does not cite any law to support its contention that it need only prove "some chance" of winning, rather than a substantial likelihood of success on the merits. The EEOC's argument fails for two reasons: (1) irreparable harm is not presumed in this case and (2) the Court will not uphold an unsupported contention when the EEOC is asking for such an extraordinary remedy. The Court concludes that the EEOC maintains the burden of persuasion on all of the four factors required to obtain a preliminary injunction. *Miss. Power & Light*, 760 F.2d at 621. Because the EEOC has not met its burden of proving the elements necessary for establishing a preliminary injunction, the Court **DENIES** the EEOC's motion.

## A.    Substantial Likelihood of Success on the Merits

On its motion for preliminary injunction, the EEOC must demonstrate a

likelihood of success on the merits as to asserted affirmative defenses. *Original Appalachian Artworks, Inc. v. Topps Chewing Gum, Inc.,* 642 F. Supp. 1031, 1034 (N.D. Ga. 1986); *MGM v. Showcase Atlanta Coop. Prod., Inc.,* 479 F. Supp. 351, 355 (N.D. Ga. 1979)(citing *Canal Authority v. Callaway,* 489 F.2d 567 (5th Cir. 1974)).  Therefore, the EEOC must demonstrate that Exxon's BFOQ defense is unlikely to prevail at trial. *Appalachian Artworks, Inc.,* 642 F. Supp. at 1034; *Showcase Atlanta,* 479 F. Supp. at 355. In light of well-established case law and the evidence before the Court, the EEOC has not met that burden because (1) Exxon is entitled to rely on the FAA's policies and expertise under the congruence standard and (2) Exxon's Age 60 Rule is a BFOQ. *EEOC v. El Paso Natural Gas Co.,* 626 F. Supp. 182, 186 (W.D. Tex. 1985)(citing *Western Airlines v. Criswell,* 472 U.S. 400 (1985)); *Coupe,* 121 F.3d at 1024.

As stated above, Exxon asserts that its Age 60 Rule is identical to the FAA's Policy for airline pilots and qualifies as a BFOQ.  In Exxon's Response to EEOC's Motion to Extend Time, Exxon has stated, "[i]f and when the FAA makes a final decision, Exxon will follow that decision and apply the same retirement age to its congruent operations." The ADEA protects workers from discrimination based on age.  29 U.S.C. § 623; *EPNG,* 626 F. Supp. at 184.  However, an employer may lawfully take any action otherwise prohibited by the ADEA where age is a BFOQ reasonably necessary to the normal operation of the particular business.  29 U.S.C. § 623(f); *EPNG,* 626 F. Supp. at 184.

- 10 -

### 1.    Exxon is entitled to rely on the FAA Age 60 Rule Under the Congruence Standard

Under the congruence standard, Exxon is entitled to rely upon the expertise of the FAA and apply the Age 60 Rule to its own pilots as a BFOQ.  *EPNG*, 626 F. Supp. at 186 (holding EPNG entitled to rely on FAA rule under congruence standard because there was no substantial difference between the work performed by commercial airline pilots and EPNG's corporate pilots); *Coupe,* 121 F.3d at 1024-25 (holding that the FAA Age 60 rule provided Federal Express a valid defense to the ADEA claim as a matter of law and plaintiff therefore had no right to an injunction requiring Federal Express to reinstate him as a pilot); *Criswell,* 472 U.S. at 418.   As the *EPNG* Court held, the FAA Age 60 Rule is relevant evidence in support of Exxon's BFOQ defense. 626 F. Supp. at 185-86 (citing *Criswell,* 472 U.S. at 418).   The extent to which the Age 60 Rule is probative depends on the congruity between the occupations of airline pilots and corporate pilots.  *Id.*   Like the *EPNG* Court, this Court finds that the occupations of airline pilots and Exxon's corporate pilots are congruent.  *Id.*   Exxon has established congruence by demonstrating that the work performed by Exxon pilots is substantially similar to the work performed by commercial and commuter and regional airline pilots. *EPNG*, 626 F. Supp. at 185-86 (finding that no substantial difference between the work performed by airline pilots and EPNG's pilots existed because EPNG's pilots, like airline pilots, transport significant number of passengers over long distances in various kinds of aircraft).

- 11 -

Similar to commercial and commuter and regional airline pilots, Exxon's pilots transport significant numbers of passengers, including executives and employees, over long distances in various kinds of sophisticated jet aircrafts. *Id.* Likewise, no substantial difference exists between the qualifications for pilots of commercial and regional airliners and the qualifications for Exxon's pilots. To be hired by Exxon, pilots must hold an Airline Transport License, the highest level of qualification for pilots, and have broad international experience. Such experience is necessary because, like airline pilots, Exxon's pilots fly all over the world in the same airspace and air traffic control sectors as airlines. Exxon pilots fly under identical weather conditions and take off and land at the same or similar domestic and international airports. Because Exxon's aviation operations are substantially similar to airline operations, Exxon has properly relied on the FAA's expertise and the FAA rule requiring retirement of commercial airline pilots at age 60 in implementing its own Age 60 Rule. *Id.* at 186 (concluding EPNG entitled to rely upon the expertise of the FAA and apply the Age 60 Rule to their own pilots as a BFOQ). If the FAA does in fact adopt the Age 65/60 Rule, Exxon must implement the same Age 65/60 Rule in order to maintain its BFOQ defense.

## 2.    Exxon's Age 60 Rule is a BFOQ under Two-Part Test

As both Parties agree, the Supreme Court has adopted a two-part test to determine whether a BFOQ has been established: (1) the age limit must be reasonably necessary for the safe operation of Exxon's aircraft; and (2) that it is impossible or highly

impractical to determine on an individual basis, whether a particular pilot's age renders him unable to perform safely and efficiently. *Criswell,* 472 U.S. at 412-15; *Usery v. Tamiami Trail Tours, Inc.,* 531 F.2d 224, 236 (5th Cir. 1976); *EPNG,* 626 F. Supp. at 184. As previously stated, Exxon may rely on the FAA's Age 60 Rule in determining that (1) its Age 60 Rule is necessary to safely operate its planes and (2) that it is impossible or highly impractical to determine on an individual basis, whether a particular pilot's age renders him unable to perform safely and efficiently. *Coupe,* 121 F.3d at 1026 (FAA performed the same analysis that a court would undertake in determining the legitimacy of a BFOQ under the ADEA); *EPNG,* 626 F. Supp. at 185-86; *Criswell,* 472 U.S. at 418.

Like the FAA's Age 60 Rule, Exxon's Age 60 Rule is reasonably necessary to safely operate its corporate aviation department. *Criswell,* 472 U.S. at 418; *EPNG,* 626 F. Supp. at 184. Safety goes to the core of an aircraft pilot's performance. *Coupe,* 121 F.3d at 1025. In fact, the EEOC does not dispute that safety goes to the core of an aircraft pilot's performance and is reasonably necessary to safely operate Exxon's aviation department. *Criswell,* 472 U.S. at 418 (plaintiffs "have not seriously disputed–nor could they–that the qualification of good health for a vital crew member is reasonably necessary to the essence of the airline's operations."); *EPNG,* 626 F. Supp. at 184. The FAA has decided that safety concerns make the Age 60 rule "reasonably necessary" for pilots. *See Coupe,* 121 F.3d at 1025. Even under the proposed Age 65/60 Rule, aging pilots remain a safety concern for the FAA–under the proposed rule, a pilot may fly up

to age 65 so long as the other pilot is under 60–presumptively due to safety issues concerning aging pilots.   As stated above in Section I of this Order, the FAA has concluded, that it remains impossible to predict, with reliable accuracy, the presence or onset of various medical problems in an aging pilot or detect and measure adequately declining physical and mental functions.   Based on the FAA's determination and the evidence before the court, Exxon's Age 60 Rule is reasonably necessary to safely operate its corporate aviation department.   *Id.*; *EPNG,* 626 F. Supp. at 184.   Shall the FAA's determination change by adopting the Age 65/60 Rule, Exxon has confirmed that it will continue to rely on the FAA's expertise and change its Age 60 Rule to conform with the FAA's Age 65/60 Rule.   Exxon may have an even greater justification for relying on the FAA's expertise because its pilots have greater pre-flight responsibilities than even commercial airline pilots. *EPNG,* 626 F. Supp. at 184 (in upholding Defendants' BFOQ defense, the Court noted that corporate pilots often have greater pre-flight responsibilities).   For example, unlike commercial airline pilots, Exxon's pilots perform their own route planning, weather checking, and fuel computations.

It is impossible or highly impractical to determine on an individual basis whether a particular Exxon pilot's age renders him unable to perform safely and efficiently.   Since it employs 25-30 pilots, the EEOC argues that Exxon can individually test its pilots individually to determine when a pilot would become medically disqualified.   However, the current FAA studies confirm the views of Exxon's medical experts that certain

physiological and psychological functions of Exxon's pilots will deteriorate with age; that over time, this deterioration affects the pilots ability to safely perform; and that no medical testing methods can predict with necessary accuracy, whether and when an individual Exxon pilot may no longer be able to fly safely.   The FAA has rejected proposed alternatives to the Age 60 Rule such as periodic medical examinations and performance checks.  *See Prof. Pilots Fedn.v. FAA,* 118 F.3d 758, 764 (D.C. Cir. 1997); *see also Baker v. FAA,* 917 F.2d 318 (7th Cir. 1990).  As aforementioned, the FAA stated before the Senate Subcommitte on Aviation that:

> no absolute, scientific formula may readily be applied to predict progressive anatomic, physiological, and cognitive decline associated with aging because it is variable in severity and onset among individuals.

Relying on the FAA's expertise and the evidence before the Court, it is impossible or highly impractical to determine on an individual basis whether a particular Exxon pilot's age renders him unable to perform safely and efficiently.

### 3.    The FAA's Proposed Age 65/60 Rule

The Court acknowledges that Administrator Blakey stated that the FAA is considering changing the current Age 60 Rule at least in part because the average life span has increased since the adoption of the current rule.  Even under the new Age 65/60 Rule proposal, however, age 60 remains a relevant age as pilots over age 60 must fly with a crew member under age 60.  Further, pilots must retire at 65 under the Age 65/60 Rule.  The Court will not attempt to predict whether the FAA will formally adopt the

rule after an exhaustive rule-making process.  In any event, Exxon has confirmed it will implement the Age 65/60 Rule as soon as the FAA adopts the Age 65/60 Rule.

### 4.    The EEOC has not met its burden of proving a substantial likelihood of success on the merits

The EEOC cites several cases in an attempt to carry its burden of a substantial likelihood of success on the merits including *EEOC v. The Boeing Co.* and *EEOC v. Lockheed* in support of its argument.  843 F.2d 1213 (9th Cir. 1987); 1991 WL 101185 (C.D. Cal. 1991).  However, the facts in those cases are clearly distinguishable from the facts in this case because they involve flight instructors and test pilots which fly aircraft that rarely carry passengers.  In those cases, Boeing and Lockheed's aviation operations were not substantially similar to commercial and regional and commuter airline operations; therefore, they were not entitled to rely on the FAA's Age 60 Rule as a BFOQ.

For instance, in *Boeing,* the trial court granted summary judgment on Boeing's BFOQ defense.  843 F.2d 1213.  However, in applying the congruence standard, the Ninth Circuit reversed and remanded the case for trial finding that the BFOQ issue raised fact questions.  *Id.*  The Ninth Circuit found that Boeing failed to establish, as a matter of law, that its corporate pilots had the "same characteristics" as airline pilots subject to the FAA Age 60 Rule.  *Id.* at 1220.  The *Boeing* Court based their conclusion on the fact that (1) a significant portion of Boeing pilots train other pilots, (2) some Boeing pilots perform experimental flights, and (3) most Boeing pilots do not carry

passengers. *Id.* at 1221.  However, unlike Boeing, Exxon's operations are substantially similar to airline operations.  Unlike the corporate pilots in *Boeing,* Exxon's pilots fly numerous passengers in the most sophisticated jets to domestic and international destinations.  In 2005, Exxon pilots carried nearly 4,000 passengers over 2,000,000 nautical miles to destinations such as Tokyo, Shanghai, Melbourne, Kuwait City, Cairo, Angola, Cameroon, Venezuela, Ecuador, London, Paris, Rome, Prague, Kazakhstan, Norway, and Moscow.

In support of its argument that it is likely to succeed on the merits, the EEOC also cites *EEOC v. International Paper Co.*, C.A. No. 92-0062 (S.D.N.Y. June 6, 1992).  In that case, International Paper lost a jury verdict on the BFOQ question.  However, *International Paper* is distinguishable from the facts in this case because at the time the case was decided by the jury the FAA had not extended its Age 60 Rule to include regional and commuter airline pilots.  It is clear Exxon pilots fly aircraft far faster than turboprop planes operated by many U.S. regional airlines.  For example, Exxon's Global Express and Gulfstream IV aircraft are larger, faster, and have greater range than the fifty-seat Canadair Regional Jet and the Embracer Regional Jet, two of the most common regional jets used by commercial airliners such as American Eagle, United Express, Northwest Airlink, and US Airways.  Because Exxon pilots fly jets just as sophisticated or more sophisticated as regional and commuter jets, the nature and the risks of operating such planes are substantially congruent to those airliners.  In light of the fact

that (1) Exxon's pilots fly numerous passengers to domestic and international locations in the most sophisticated jets and (2) the FAA has extended its Age 60 Rule to include regional and commuter pilots, the Court finds that the facts in this case are clearly distinguishable from International Paper.   The EEOC's reliance on two cases involving test pilots with clearly distinguishable facts and one jury verdict in a case that was decided before the FAA extended its Policy to include commuter and regional airliners does not demonstrate that Exxon's BFOQ defense is unlikely to prevail at trial.

Because the EEOC has not demonstrated that Exxon's BFOQ defense is unlikely to prevail at trial, the EEOC has failed to carry its burden of proving a substantial likelihood of success on the merits.   Based on case law and evidence before the Court, Exxon is entitled to rely on the FAA's policies and expertise because its aviation operations are substantially similar to airline pilots subject to the FAA Age 60 Rule.   In addition, Exxon's Age 60 Rule is a BFOQ because its rule is reasonably necessary to the safe operation of corporate aircraft and Exxon should be able to rely on the FAA as to the safe age of pilots.   Without citing any legal authority, the EEOC now argues in its Supplemental Brief and Amended Request for Preliminary Relief that Administrator Blakey's comments increased the likelihood that it will prevail at trial.   The EEOC is incorrect because if the Age 60 Rule is a BFOQ that is based on the FAA rule, Exxon must be able to rely on that rule until it is changed.   The Court is probably making a decision just prior to a change in the FAA Age 60 Rule.   Until that change is made and

since the Court has found Exxon to be congruent to a commercial airline, Exxon should be able to rely on the same standards that govern every commercial airline in this country. All commercial airlines are continuing to follow the Age 60 Rule until the FAA or Congress formally changes that rule.

### B.    Irreparable Harm

As stated above, the EEOC argues that under *Cosmair* irreparable harm should be presumed. 821 F.2d at 1090. Because Exxon has presented a BFOQ to the EEOC's alleged ADEA violation which is identical to the FAA's current Age 60 Rule, the Court disagrees with the EEOC and will not presume irreparable harm. Where money damages adequately compensate the aggrieved party, no irreparable injury exists. *DFW Metro Line Serv. v. Southwestern Bell Telephone,* 901 F.2d 1267, 1269 (5th Cir. 1990). In this case, monetary damages would adequately compensate all Exxon's Age 60 Pilots from any injury resulting from a new job paying less or conferring less benefits. *Id.* The Court concludes the EEOC has not carried its burden of proving irreparable harm particularly in light of the fact a preliminary injunction is such an extraordinary remedy and that any difference in salary and benefits could be compensated with money. *Id.*

### C.    Whether the threatened harm to Exxon's Age 60 Pilots outweighs that of Exxon

Because the EEOC has failed to establish that (1) it is substantially likely to prevail on the merits and (2) the pilots will suffer irreparable harm if the injunction is denied, the Court does not address whether the threatened injury to Exxon's Age 60

- 19 -

Pilots outweighs the threatened harm to Exxon nor does the Court address whether the preliminary injunction will serve or disserve the public interest.

## III.    Conclusion

The Court **GRANTS** the EEOC's motion to file additional affidavits and exhibits; therefore, the attached affidavits and exhibits are deemed filed as of this date.  The Court **DENIES** the EEOC's motion to extend time as moot.  Because the EEOC has not carried its burden on all four elements necessary to obtain a preliminary injunction, the Court **DENIES** the EEOC's Application for a Preliminary Injunction.

**SO ORDERED.**

Signed May 29th, 2007.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE