IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT | § | |
| OPPORTUNITY COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. |
| v. | § | 3:06-CV-1732-K |
| | § | |
| EXXON MOBIL CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions: (1) Defendant's Motion to Strike
Plaintiff's Expert Witnesses Robert "Hoot" Gibson, Joseph Eichelkraut, and Gaetan
Anthony Passannante (Doc. No. 91), (2) Plaintiff's Motion to Strike Defendant's
Expert Dr. P. Richard Jeanneret and Brief in Support Thereof (Doc. No. 92), (3)
Plaintiff's Motion to Strike Defendant's Expert Jorge Romero and Brief in Support
Thereof (Doc. No. 95), (4) EEOC's Motion for Partial Summary Judgment or in the
Alternative Motion to Strike Affirmative Defenses and Brief in Support Thereof
(Doc. No. 93), (5) Defendant Exxon Mobil Corporation's Second Motion for
Summary Judgment (Doc. No. 94), (6) Exxon Mobil Corporation's Motion to Open
and Close at Trial and Brief in Support (Doc. No. 107), and (7) Agreed Motion to
Extend Deadline for Designation of Deposition Testimony (Doc. No. 108), and (8)
Joint Motion Requesting Pre-Trial Conference (Doc. No. 114).   The Court has

considered all eight motions, all related responses, replies, evidence submitted by the parties, and applicable law.  The following is hereby **ORDERED**:

Defendant's Motion to Strike Plaintiff's Expert Witnesses Robert "Hoot" Gibson, Joseph Eichelkraut, and Gaetan Anthony Passannante (Doc. No. 91), Plaintiff's Motion to Strike Defendant's Expert Dr. P. Richard Jeanneret and Brief in Support Thereof (Doc. No. 92), and Plaintiff's Motion to Strike Defendant's Expert Jorge Romero and Brief in Support Thereof (Doc. No. 95) are **DENIED**.

Because Defendant Exxon Mobil Corporation has established a bona fide occupational qualification as a matter of law, Defendant Exxon Mobil Corporation's Second Motion for Summary Judgment (Doc. No. 94) is **GRANTED**.

EEOC's Motion for Partial Summary Judgment or in the Alternative Motion to Strike Affirmative Defenses and Brief in Support Thereof (Doc. No. 93) is **DENIED**.

Exxon Mobil Corporation's Motion to Open and Close at Trial and Brief in Support (Doc. No. 107), the Agreed Motion to Extend Deadline for Designation of Deposition Testimony (Doc. No. 108), and the Joint Motion Requesting Pre-Trial Conference (Doc. No. 114) are **DENIED as moot**.

Judgment will be entered by separate document.  Fed. R. Civ. P. 58(a).

## I. Factual and Procedural Background

Generally, this case involves alleged age discrimination.  At the time the suit was commenced, Exxon maintained a corporate policy that prohibited its pilots from

flying corporate aircraft after they reached the age of 60 and forced such pilots to involuntarily retire at age 60.  This rule mirrored a rule used by the Federal Aviation Administration that applied to pilots flying for commercial airlines.  Based on the "age 60 rule," Exxon forced at least three pilots to retire in 2006 and 2007.  The EEOC brought suit on behalf of these pilots and others alleging age discrimination.

A more detailed statement of the factual and procedural background in this case was discussed in this Court's opinion dated April 28, 2008, that granted Defendant Exxon Mobil Corporations's ("Exxon's") first motion for summary judgment.  That factual and procedural background is incorporated herein by reference.  The Court now sets forth only those additional facts necessary to dispose of the motions before the Court.

On August 31, 2007, Exxon filed a motion for summary judgment. Subsequently, on April 28, 2008, this Court granted the motion, and the Equal Employment Opportunity Commission's ("EEOC's") case was dismissed with prejudice by final judgment entered May 2, 2008.  The Fifth Circuit vacated judgment and remanded the case on the grounds that this Court had restricted discovery to the issue of congruency regarding bona fide occupational qualifications prior to granting final summary judgment to Defendant.  The Fifth Circuit found that the EEOC had been prejudiced when this Court granted summary judgment on both

congruity and continuing validity regarding bona fide occupational qualifications but had not allowed sufficient discovery on the issue of continuing validity.

Although the Fifth Circuit vacated the summary judgment granted by this Court, the Fifth Circuit allowed this Court to decide whether to reopen discovery as to the issue of congruity. By order dated August 16, 2010, this Court denied the EEOC's request to open discovery beyond the issue of continuing validity.

## II.    *Daubert* Motions

Before the Court is Defendant's Motion to Strike Plaintiff's Expert Witnesses Robert "Hoot" Gibson, Joseph Eichelkraut, and Gaetan Anthony Passannante (Doc. No. 91), Plaintiff's Motion to Strike Defendant's Expert Dr. P. Richard Jeanneret and Brief in Support Thereof (Doc. No. 92), and Plaintiff's Motion to Strike Defendant's Expert Jorge Romero and Brief in Support Thereof (Doc. No. 95).

### A.    Legal Standard

The trial court acts as a "gatekeeper" to exclude expert testimony that does not meet the relevancy and reliability threshold requirements. In this role, the trial court determines the admissibility of expert testimony based on Federal Rule of Evidence 702. When "[f]aced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,*

509 U.S. 579, 592 (1993).  This determination hinges on reliability and relevance. The reliability standard is established by Rule 702's requirement that an expert's testimony pertain to "scientific . . . knowledge," which implies a grounding in science's methods and procedures and more than subjective belief or unsupported speculation.  *Daubert*, 509 U.S. at 589-80.  The relevancy standard is established by Rule 702's requirement that the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue."  This requires that the testimony by "helpful" by requiring "a valid scientific connection to the pertinent inquiry as a precondition to admissibility."  *Id.* at 592.

Many considerations will bear on the inquiry of admissibility of expert testimony, including whether the theory or technique in question can be (and has been) tested, whether it has been subjected to peer review and publication, its known or potential error rate and the existence and maintenance of standards controlling its operation, and whether it has attracted widespread acceptance within a relevant scientific community. *Id.* at 591-95.  "The inquiry envisioned by Rule 702 is . . . a flexible one.  Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Id.* at 594-95.

Additionally, "the trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system."  Fed. R. Evid. 702,

advisory committee's note, citing *United States v. 14.38 Acres of Land More or Less Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996).    Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.    Thus, a trial court is not permitted under *Daubert* to "transform a *Daubert* hearing into a trial on the merits." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002).

### B.    Analysis

#### 1.    Robert "Hoot" Gibson, Joseph Eichelkraut & Gaetan Anthony Passannante

Exxon seeks to exclude the testimony of Robert "Hoot" Gibson, Joseph Eichelkraut, and Gaetan Anthony Passannante, because Exxon contends that they are not qualified to offer opinions on the issue of continuing validity, their opinions are unreliable, and their opinions are not relevant to the issue of continuing validity.    The crux of Exxon's argument revolves around the fact that Mr. Gibson, Mr. Eichelkraut, and Mr. Passannante are pilots and do not have any education, experience, training, or skill in medicine or science.    Additionally, Exxon contends that the pilots' opinions are not based on recognized reasoning or methodology, and their personal interest in the FAA's age-based rule makes their opinions unreliable.    The EEOC, on the other hand, argues that all three pilots have extensive and relevant training and experience

as pilots that provide a reliable basis for them to testify on aviation safety and operational issues.

While Mr. Gibson, Mr. Eichelkraut, and Mr. Passannante may not have expertise in medicine, they do have significant training and knowledge as pilots. Their opinions based on this training and experience are certainly relevant to the core issue of this case, whether Exxon's age-based rule is a bona fide occupational qualification. The Court will not exclude the entire opinions of Mr. Gibson, Mr. Eichelkraut, and Mr. Passannante. Rather, Exxon was free to vigorously cross-examine these witnesses by deposition, present contrary evidence in its briefing, or object to the specific portions of testimony that Exxon contends go beyond the scope of their expertise. Defendant's Motion to Strike Plaintiff's Expert Witnesses Robert "Hoot" Gibson, Joseph Eichelkraut, and Gaetan Anthony Passannante (Doc. No. 91) is **DENIED**.

### 2.    Dr. P. Richard Jeanneret

The EEOC seeks to strike the expert opinion of Dr. P. Richard Jeanneret. The EEOC contends that Dr. Jeanneret has no knowledge, skill, experience, training, or education in any of the subjects relevant to this litigation, by arguing that Dr. Jeanneret does not possess any education or experience on the effects of aging on cognition, cardiovascular function, or general abilities, operations and medical testing of pilots. Additionally, the EEOC argues that Dr. Jeanneret did not familiarize

himself with the techniques utilized by the authors of the studies he reviewed, did not take the time to read all of the publications generated by his research, and he does not understand why some publications were listed in his report as relevant to the formulation of his expert opinion.

Aside from these contentions, the EEOC admits that Dr. Jeanneret, among other things, is experienced in industrial and organizational psychology which includes the study of safety in the workplace.  Dr. Jeanneret's expert testimony includes the opinion that current pilot testing measures are less reliable than an age-based rule.  Exxon has shown that Dr. Jeanneret's training, education, and knowledge allow him to statistically examine the reliability and validity of such testing measures. This testimony is relevant to the issue of continuing validity.

After review, the Court has determined that the EEOC's arguments regarding Dr. Jeanneret's expert opinion go to the weight to be given to the expert's report and testimony, rather than to the admissibility.  The EEOC was free to present contrary evidence and attempt to diminish the credibility of Dr. Jeanneret's qualifications. Plaintiff's Motion to Strike Defendant's Expert Dr. P. Richard Jeanneret and Brief in Support Thereof (Doc. No. 92) is **DENIED.**

### 3.    Dr. Jorge Romero

The EEOC seeks to exclude the expert testimony of Dr. Jorge Romero, because the EEOC contends that he is not qualified to testify on the specific aviation medical

issue involved in this case.  Dr. Romero is a doctor specializing in neurology.  The EEOC alleges that general knowledge and experience in neurology does not qualify Dr. Romero to testify as an expert on the aviation medical issues relating to the safety risk of sudden incapacitation of pilots by stroke.  The EEOC argues that because of this, Dr. Romero has no independent basis in knowledge in any of the aviation medical matters about which he would be called to testify, nor has he conducted an analysis of Exxon's flight operations or of the medical testing that Exxon has in place to assess the fitness of its pilots.  Additionally, the EEOC argues that Dr. Romero's expert testimony is not relevant, because his opinion applies to adults at large and fails to solely address the specific population of pilots.

Dr. Romero's expert opinion relates to the frequency of strokes and the ability to predict them.  Much like Dr. Jeanneret's testimony, the EEOC's challenges to Dr. Romero's testimony go to the weight to be given to the expert's report and testimony, rather than to the admissibility.  As a practicing neurologist with 34 years of experience in neurology, stroke prevention and stroke treatment, Dr. Romero is sufficiently qualified to testify regarding risk factors of a stroke (including age), the affect of stroke on a population and whether neurology can predict if a particular individual will suffer a stroke.  That testimony is certainly relevant to the continuing validity of the rationale supporting an age-based retirement rule for pilots.  The basis of the EEOC's challenge is that Dr. Romero lacks expertise related to the

incapacitation of pilots specifically, and he relies on statistics related to the general population rather than the subgroup of pilots. To the extent that the EEOC claims that general neurology principles are not probative on pilots' neurological risks, that claim goes to the weight of the expert's opinion, not its admissibility. Plaintiff's Motion to Strike Defendant's Expert Jorge Romero and Brief in Support Thereof (Doc. No. 95) is **DENIED**.

### C.    Summary

Having carefully considered the briefing, the evidence, and the applicable law, the Court finds that the expert challenges presented by Defendant's Motion to Strike Plaintiff's Expert Witnesses Robert "Hoot" Gibson, Joseph Eichelkraut, and Gaetan Anthony Passannante (Doc. No. 91), Plaintiff's Motion to Strike Defendant's Expert Dr. P. Richard Jeanneret and Brief in Support Thereof (Doc. No. 92), and Plaintiff's Motion to Strike Defendant's Expert Jorge Romero and Brief in Support Thereof (Doc. No. 95) were more appropriately handled by presentation of contrary evidence or other traditional means of attacking evidence. The motions (Doc. Nos. 91, 92, 95) are **DENIED**.

### III.   Exxon's Second Motion for Summary Judgment

Now before the Court is Defendant Exxon Mobil Corporation's Second Motion for Summary Judgment (Doc. No. 94).

## A.     Summary Judgment Standard

"Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing Fed. R. Civ. P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Triple Tee Golf*, 485 F.3d at 261 (citing *Celotex*, 477 U.S. at 322 25).  The burden then shifts to the non-moving party to show the existence of a genuine issue of material fact for trial. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).

A dispute of a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon*, 560 F.3d at 326 (quoting *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)).  All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant, and all disputed facts resolved in favor of the nonmovant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *see also Sossamon*, 560 F.3d at 326.

### B.     Bona Fide Occupation Qualification

The ADEA prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a).  However, the ADEA also provides that it shall not be unlawful for an employer to take any action otherwise prohibited by the ADEA "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." 29 U.S.C. § 623(f).  Exxon contends that its policy of removing pilots from active flight status when  they attain a specified age constitutes a bona fide occupational qualification ("BFOQ") under the ADEA.

Pursuant to the standard set forth in *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224 (5th Cir. 1976), as approved by the United States Supreme Court in *Western Air Lines, Inc. v. Criswell*, 472 U.S. 400 (1985), in order to establish a BFOQ, the employer must show that the age limit is reasonably necessary to the essence of the business.  Additionally, the employer must demonstrate that the age limit is reasonably necessary to the particular business by establishing that it had reasonable cause to believe that all or substantially all persons over the age qualifications would be unable to perform safely and efficiently the duties of the job involved or, alternatively, that it is impossible or highly impractical to deal with the older

employees on an individualized basis (i.e. the trait cannot be ascertained except by age). *See Western Air Lines*, 472 U.S. at 414.

Exxon contends that its reliance on the FAA rule prohibiting a pilot from flying after they reach a particular age is probative evidence of a BFOQ. The FAA's Age 60 Rule provided that no airline carrier "may use the services of any person as a pilot . . . if that person has reached his 60th birthday. No person may serve as a pilot [in commercial airline] operations . . . if that person has reached his 60th birthday." 14 C.F.R. § 121.383(c). The Fair Treatment for Experienced Pilots Act ("FTEPA"), which was effective as of December 13, 2007, repealed the FAA's Age 60 Rule and provided, subject to a limitation related to international travel, "a pilot may serve in multicrew covered operations until attaining 65 years of age."

The passage of the FTEPA does not significantly alter the Court's analysis in this case. The EEOC still argues that Exxon is improperly enforcing a mandatory retirement age for its pilots. Exxon still argues that its mandatory retirement age is not a violation of the ADEA, particularly in light of its congruence with the rule applied by the FAA. Whether reliance by an employer on a government agency's age-related rule is probative of a BFOQ, in this context, depends upon the congruity between the occupations at issue and the weight of the evidence supporting the rule's rationale. *Western Air Lines, Inc.*, 472 U.S. at 418.

### 1.    Congruence

The Court's determination regarding congruity in the Court's previous Memorandum Opinion and Order (Doc. No. 41) granting Defendant's first motion for summary judgment remains the opinion of the Court.   Neither party has presented any new arguments in their summary judgment briefing that would alter the Court's position.   Exxon employs 27 pilots who fly all over the world with job responsibilities similar to those of commercial pilots.   Exxon's fleet includes nine jet aircraft, including four Bombardier Global Express jets and five Bombardier Challenger 300 jets. Operating these jets requires similar safety concerns as those of commercial airlines. This Court found that the work performed by Exxon's pilots is congruent with the work performed by commercial airline pilots in all material ways. The Court will not unnecessarily restate the entire opinion of the Court regarding congruity and, instead, will incorporate the Court's previous determination regarding congruity herein and only address the weight of the evidence supporting the rule's rationale, i.e. continuing validity.

### 2.    Continuing Validity

Exxon's summary judgment asserts that Exxon's reliance on the FAA age-based rule establishes a Bona Fide Occupational Qualification in this case.  As congruency has already been established, in order to prevail on its summary judgment, Exxon must establish the continuing validity of the rationale supporting the FAA's Age 60

Rule by providing evidence supporting its safety rationale.  To conclusively establish continuing validity, Exxon must set forth evidence that shows that no testing existed to predict when or if an over-age-60 pilot might experience a medical event that could jeopardize aviation safety.  The relevant time period is 2006 and 2007 when the pilots involved in this case were forced to retire; however, Exxon has provided conclusive evidence that the FAA's safety rationale supporting the age-based rule was valid in 2006 and 2007 and continues to be valid today.  Because Exxon has presented conclusive evidence that the risk of sudden incapacitating events increases with age and no test can identify if or when that event may occur, and because the EEOC has failed to set forth any evidence to the contrary, Exxon has proved the continuing validity of its age-based rule as a matter of law.

It is undisputed that the rationale for the federal government's age-based rule for commercial pilots is based on safety.  Generally, Exxon contends that aging causes a progressive physiological and cognitive decline, and that it remains impossible to determine whether or when an individual pilot will experience a medical event jeopardizing aviation safety.   This was and is the rationale in support of the FAA's age-based rule.  Exxon has provided the expert testimony of Dr. Jon L. Jordan to establish that the FAA's rationale for an age-based rule is based on three scientific and medical determinations: (1) the risk of an incapacitating event, along with the fact that cognitive and motor abilities generally decline with age; (2) no combination of

-15-

tests can identify whether or when a particular pilot will become incapacitated or experience more subtle cognitive declines; and (3) these risks increase sharply after age 60.  As late as March 2006, the FAA reaffirmed the scientific and medical basis for the Age 60 rule.  In December of 2007, Congress enacted the Fair Treatment for Experienced Pilots Act ("FTEPA") and modified the age-based rule to allow airline pilots to fly until they are 65, subject to a limitation related to international travel. Thus, Congress maintained a mandatory retirement age for commercial pilots but raised the age limit for domestic flights by 5 years.  There is no question that today Congress and the FAA continue to rely on an age-based rule for retirement of pilots.

Exxon points to multiple organizations, including the National Institute on Health, the Civil Aeromedical Institute, and the Aerospace Medical Association, that affirm the notion that sudden and subtle incapacitations cannot be predicted accurately as to any specific individual.  Exxon's own Global Medical Director, Dr. Clarion Johnson reviewed studies in 2003 that led him to conclude that scientific evidence supports the rationale of an age-based rule.  Further, Exxon has offered expert testimony as to the continuing validity of the rationale.  Dr. Jon Jordan, a doctor with a career in aerospace spanning over 40 years, Dr. William Roberts, a doctor trained in internal medicine, cardiology, and anatomic pathology and Executive Director of the Baylor Heart and Vascular Institute of Baylor University Medical Center, and Dr. Jorge Romero, a neurologist affiliated with Baylor University

Medical Center and certified in the specialty of neurology, have all unanimously provided testimony that medical testing does not yet exist that would be capable of singling out those individual pilots who would pose a safety hazard because of sudden incapacitation. Exxon has presented evidence that there is no genuine issue of material fact regarding the continuing validity of the safety rationale supporting and age-based rule.

It is then the EEOC's burden to present evidence that raises a fact question regarding continuing validity. The EEOC has had every chance to seek discovery and gather support for its position regarding continuing validity. Despite its best efforts, the EEOC has simply not presented any evidence that medical testing exists that could identify those individuals over a specified age that are at risk of sudden incapacitation. The lack of evidence by the EEOC reflects the limits of what scientific evidence is available.

The EEOC has attempted to counter Exxon's expert testimony by outlining five facts it believes are controverted and present a genuine issue of material fact in this case. To substantiate its arguments, the EEOC offers expert testimony of its own. Although the EEOC's experts all possess excellent credentials, including three pilots and an experienced Aviation Medical Examiner, for the reasons discussed below, the expert testimony they present does not raise a genuine issue of material fact.

First, the EEOC offers evidence that accidents resulting from incapacitation of a pilot are rare. Rarity of occurrence alone fails to present a fact question as to continuing validity. The rationale supporting the age-based rule is not that accidents frequently occur due to incapacitation; it is that incapacitation cannot be "tested for" or "predicted" on an individual basis and sudden unpredictable incapacitation jeopardizes aviation safety.

Second, the EEOC points out that Exxon and its experts relied on statistics and studies of the general population rather than the sub-group of the pilot population. While the EEOC's expert reports and evidence may support the conclusion that pilots as a subgroup are healthier than the general population, the EEOC has presented no evidence that pilots have zero risk of incapacitation as they get older or that their risk of incapacitation could be tested for or predicted. One of the EEOC's experts, Dr. Stan Mohler, acknowledges the risk of incapacitation by stating that although a pilot's risk of future heart problems is less than the general population's risk, he admits that the risk of pilot incapacitation does indeed exist.

Third, the EEOC contends that the FAA's medical exam (and additional testing), flight simulator testing, line checks, and crew resource management techniques are a reliable way to screen unsafe pilots, thus eliminating any need for an age cut-off. The EEOC points to the fact that incapacitating events occur to pilots under the age of 60 that are tested and frequently returned to flight duty. The EEOC

contends this same testing pinpoints those individuals over the age of 60 who pose a risk of sudden incapacitation.  Similarly, in its fourth controverted fact, the EEOC asserts that medical advancements present alternatives to imposing an age-based rule.

Both sides agree that medical testing continues to advance and that medical testing provides a mechanism to test pilots.  However, the rationale challenged in this case is that sudden incapacitation increases with age and cannot be tested for or predicted on an individual basis.  The EEOC has not identified a specific test or method for identifying the risk of incapacitation in an individual over the age of 60. Dr. Mohler, one of the EEOC's experts, points to various medical advancements, particularly in the area of cardiovascular health, that he believes defeat the rationale of an age-based rule.  What Dr. Mohler describes is what this Court and both sides already know.  Numerous significant advances in cardiovascular and neurological testing have and continue to occur.  The EEOC's experts, while thorough in their testimony that current testing is reliable in many ways and medicine continues to rapidly advance, demonstrate or present a fact question regarding the rationale.  They point to no single test or collective tests that can identify when a pilot over age 60 will experience a sudden incapacitation.

Finally, the EEOC contends that at the time Exxon terminated the pilots involved in this case, the continued validity of the FAA age 60 rule had already been called into question.  The EEOC points to congressional testimony, position papers,

and international surveys that the EEOC argues indicate that in 2004 and 2005 the industry opinion was shifting away from an age 60 limit.  The EEOC argues that had Exxon truly examined the rationale of the rule, Exxon would have discovered that the age 60 rule lacked continuing validity.  Although Congress eventually altered the age at which mandatory retirement occurs, reliance on age as a determinative factor in deciding when a pilot may no longer fly has never wavered.  Congress may have been considering altering the age limit, but as Exxon points out, as late as March 2006, the FAA reaffirmed the scientific and medical basis for the age 60 rule.  The rationale underlying the rule, that the risk of sudden incapacitation cannot be tested for or predicted on an individual basis, continues to be the rationale for the new age 65/60 rule.  Only the age-limit bar changed; the rationale for an age-based rule continues to be valid.  The EEOC has offered no evidence that presents a question of fact as to the continuing validity of the rationale underlying the age-based rule.

Since congruity prevails in this case as previously determined by the Court, and the weight of the evidence supporting the rationale underlying an age-based rule, the FAA's age 60 rule in place and applied by Exxon at the time Exxon terminated the pilots involved in this case establishes Exxon's BFOQ defense as a matter of law.  The EEOC has presented no evidence to create a question of fact regarding the continuing validity of the rationale.  Exxon is entitled to summary judgment.

###           3.          Non-FAA Support for the BFOQ

The EEOC contends that the standard for establishing a BFOQ cases involving federal regulations requires a showing of both (1) congruency and continuing validity and (2) reasonable cause for believing all persons over 60 would be unable to perform safely or it is impossible or impractical to deal with persons over 60 on an individual basis.  The Court disagrees.  Even if the EEOC is correct, Exxon presented sufficient evidence to establish its BFOQ as a matter of law.

As stated previously, in order to establish a BFOQ, the employer must show that the age limit is reasonably necessary to the essence of the business.  Additionally, the employer must demonstrate that the age limit is reasonably necessary to the particular business by establishing that it had reasonable cause to believe that all or substantially all persons over the age qualifications would be unable to perform safely and efficiently the duties of the job involved or, alternatively, that it is impossible or highly impractical to deal with the older employees on an individualized basis (i.e. the trait cannot be ascertained except by age).  The evidence from both sides before the Court establishes that the aging process impacts functions and health critical to a pilot's performance.  Any sudden incapacitation can jeopardize aviation safety.  The age-based job qualification imposed by Exxon is reasonably necessary to the safety of Exxon's airplane passengers.  Moreover, the evidence detailed previously in this opinion establishes conclusively that testing for the risk of sudden incapacitation on

an individual basis is both impossible and impractical.  The EEOC has presented no evidence to the contrary.  Exxon is entitled to summary judgment on its BFOQ defense even without the support of the FAA regulation.

### C.    Conclusion

The bottom line in this case is that conclusive evidence has been presented by Exxon that risk of sudden incapacitation and health deterioration increases with age. The EEOC does not contest this fact.  Beyond this, Exxon has provided expert testimony that establishes no test can predict whether that risk will become a reality. Whether the risk is rare is not the point.  Whether the medical field has advanced significantly in the last few years is not enough to raise a fact issue about the BFOQ in this case.  Sudden incapacitation is a risk that jeopardizes the safety of Exxon's passengers.  Because Exxon cannot test for this risk on an individual basis, they have established a BFOQ as a matter of law.

The EEOC has failed to raise a genuine issue of material fact with respect to Exxon's BFOQ defense, and the Court concludes that summary judgment is appropriate.  Defendant Exxon Mobil Corporation's Second Motion for Summary Judgment (Doc. No. 94) is **GRANTED**.  Judgment will be entered by separate document.  Fed. R. Civ. P. 58(a).

## IV.    Remaining Motions

After review of the briefing, evidence, and applicable law related to EEOC's Motion for Partial Summary Judgment or in the Alternative Motion to Strike Affirmative Defenses and Brief in Support Thereof (Doc. No. 93), the motion is **DENIED**.  Because the Court has granted Exxon's motion for summary judgment, Exxon Mobil Corporation's Motion to Open and Close at Trial and Brief in Support (Doc. No. 107), the Agreed Motion to Extend Deadline for Designation of Deposition Testimony (Doc. No. 108), and the Joint Motion Requesting Pre-Trial Conference (Doc. No. 114) are all **DENIED** as moot.

## V.    Conclusion

Defendant's Motion to Strike Plaintiff's Expert Witnesses Robert "Hoot" Gibson, Joseph Eichelkraut, and Gaetan Anthony Passannante (Doc. No. 91), Plaintiff's Motion to Strike Defendant's Expert Dr. P. Richard Jeanneret and Brief in Support Thereof (Doc. No. 92), and Plaintiff's Motion to Strike Defendant's Expert Jorge Romero and Brief in Support Thereof (Doc. No. 95) are **DENIED**.

Defendant Exxon Mobil Corporation's Second Motion for Summary Judgment (Doc. No. 94) is **GRANTED**.  Judgment will be entered by separate document.  Fed. R. Civ. P. 58(a).

EEOC's Motion for Partial Summary Judgment or in the Alternative Motion to Strike Affirmative Defenses and Brief in Support Thereof (Doc. No. 93) is **DENIED**.

Exxon Mobil Corporation's Motion to Open and Close at Trial and Brief in Support (Doc. No. 107), the Agreed Motion to Extend Deadline for Designation of Deposition Testimony (Doc. No. 108), and the Joint Motion Requesting Pre-Trial Conference (Doc. No. 114) are **DENIED as moot**.

**SO ORDERED**.

Signed September 13th, 2012.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE